We will call 4-22-0105, People of the State of Illinois v. Jeffrey Brown, counsel for the appellant, could you please state your name for the record? Yes, sir. I'm Glenn Jasper. And counsel for the appellate, could you please state your name for the record? Matthew Golden, of the People of Illinois. Thank you, gentlemen. Go ahead and have a seat. And we'll call counsel for the appellant. You may proceed. Thank you, gentlemen. Good morning or afternoon. As everybody knows, this is an appeal of a first-degree murder conviction involving Jeffrey Brown after a bench trial by Judge McGraw. Ostensibly, it is a conviction that's based on the testimony of an alleged eyewitness, LeVar Wright. A lot of it hinges upon the credibility and the finding of eyewitness testimony. Obviously, the appeal is based upon the fact of the inherent problems that you have with eyewitness testimony, especially in this situation with Judge McGraw's finding of LeVar Wright to be a credible witness. I believe, judges, that the facts of the case would underpin that distinction, that Mr. Wright was credible. Starting from the fact, and the originating fact, that Mr. Wright was a four-time convicted felon. He's a person that, after his best friend is allegedly murdered, he does not stay. He takes off. First statements he makes is he goes to a store and tells them that he was robbed. He only comes back to the scene to gather his friend's telephone. So what we have here is we have the judge making a finding of the credibility of this witness regarding what he saw in identifying Jeffrey Brown as the assailant in this case. So unlike you and I, the judge was in a position to see the witness, hear the witness, and he heard and was aware of all the same things you've just told us about, correct? It was all correct, Judge. It is correct, and sometimes that's why we have appellate courts, is to review whether or not judges, like everyone else, makes mistakes. Judges can have the credibility, but the question is for the purpose of people relying upon the law, relying upon presumption of innocence, relying upon guilt beyond a reasonable doubt, to have a witness of that magnitude, basically where it is his testimony that is convicting Jeffrey Brown. And then you get into the factors, even regarding identification. But I think the problem, at least what I look at most of all with Judge McGraw's ruling, is the fact where he makes an example of how come he finds him to be credible, but that fact is contradicted by the actual testimony of LeVar Wright at trial. If you recall, Judge McGraw testifies that he was conscientious when he viewed the photo lineup, putting his hand over the face to indicate what he looked like with the mask. But when Mr. Wright testified at the time of the trial, he never mentioned it. He disagreed. He said he didn't think he did that. The officers, however, said that he did. Right. Correct? Correct. So that too was a determination that Judge McGraw was in a position to make. It is, but he used that as an example as to the conscientiousness of Mr. Wright. Well, just because Mr. Wright says he didn't, that doesn't mean it didn't happen. Correct, but we're relying, I mean, basically we're relying on the testimony of Mr. Wright to convict Jeffrey Brown of this very serious offense, which is first-degree murder. How many times are we told that a conviction—  Go ahead. Asking this court now, in essence, to re-judge the credibility. As Justice Yerman pointed out, Judge McGraw articulated all the reasons that were the basis of his finding that McGraw Wright was credible. He put out the vigorous factors that entered into his decision. So, in essence, here, when we have that facing us as an appellate court, to me, you're asking this court to re-judge the credibility of the witness. Isn't that something you can't do? Well, I understand that the court can't re-judge the credibility and make the findings of credibility. The fact is, one, you have a system of checks and balances, and an appellate court is determined whether or not these determinations were proper and whether or not those findings were proper. Now, I'm not asking you to re-judge the credibility, but I'm asking the court to take into consideration all the facts that were in this case to determine whether or not it is a just result. You emphasize— We have more than the— I'm sorry, Justice Yerman. That's okay. Go ahead. We have more than the identification evidence here, though, as well. Do we not? We have Tyler's testimony. We have the physical evidence of the tire marks. We have the bullet holes. We have the testimony regarding the autopsy. So we just don't have the identification evidence, but we have more than that. No, I understand all of the other physical evidence, but none of that other physical evidence ties specifically to Jeffrey Brown. We know that the victim in this matter was shot and killed in that vehicle. We know all of that. We know that there were cars that were coming and going and that went away. The question is, I would agree with you if there was a specific tire on Mr. Brown's alleged vehicle where there was some kind of scientific analysis that it was the same tire. But basically, all we have is that it was Jeffrey Brown. What is the testimony of Mr. Wright? Because even Mr. Filippowitz's testimony goes to alleged motives as to why Mr. Brown would have committed this offense. All I'm asking the court to do, and again, it's one of those situations where a person is convicted of first-degree murder on the testimony of a witness, and I believe that that's something that always is to be scrutinized and to make sure that it's a proper decision. Thank you. But going into that, all of that, the other issue is whether or not there's a second prong regarding the aggravated battery of a firearm of Mr. Wright with the Graze injury, which again, respectfully, I would state that even based upon that, the testimony was not sufficient for a conviction as to that offense. Graze is something that was never determined what it was, that there was an injury, there was pain, there was anything, other than the fact of a conclusion that there was a Graze. We know that Mr. Wright never treated for that. We know that Mr. Wright never went anywhere in regards to that, other than the fact that eight days later, eight days later is when this statement comes about, because he's involved in another criminal matter, Mr. Wright, and this is the testimony that we're going to... It's not unusual for criminals to be involved in multiple offenses, is it? No, it's not, Judge. It's not, and we'll be finding out about that with the CITESY Act. He was trying to get himself some advantage out of it. Motivation, and motivation to basically tell what the officers want to hear so that he's able to walk out of those rooms. I think there's also a motive on the part of Mr. Wright to be able to tell these officers what they want to know so that they're able to conclude a case and he's able to walk out of there, because remember, at the end of the day, there was immunity that Mr. Wright was even given for his trial testimony based upon the fact of him being involved in allegedly pointing this gun at Mr. Brown and being involved in other criminal activity. All of which was moved by Judge McGraw. All of which was moved by Judge McGraw. Understood, Judge. But again, as I stand here and argue, the reason why we have appellate courts is so that there is a system of checks and balances to make sure that a determination that was made is a correct determination, is a just determination, and is a proper determination so we can all have a semblance of reliability on our court system. So that's the purpose, I believe, of the appellate court, is to make these determinations and decisions to show whether or not people have been justly tried and convicted. Anything else, counsel? No, Your Honor. All right. Thank you. Mr. Goldman. Thank you, Your Honor. Matthew Goldman for the people. May I proceed? Please. Your Honors, I'm going to address the arguments in the same order that defense counsel addressed his arguments, beginning with the sufficiency of the evidence for the murder. As defense counsel just indicated, the core of that issue is the identification testimony. But I would argue that Justice Zinoff hit the nail on the head when she discussed the corroborating evidence here. This isn't just a situation where there's only one witness, there's no physical evidence, there's no corroboration whatsoever. This is a situation where his testimony was corroborated by the testimony of Philip Bowens by supplying that motive, essentially that the defendant said, this person wronged me and this person ripped me off and I'm getting exact revenge. And then lo and behold later, that exact same thing comes to pass. And then in relation to that physical evidence, I do think that that physical evidence is relevant. The physical evidence being the tire marks, the number of shots fired. These things, while they don't go to establish directly the defendant's identity in this case, it does go to establish the credibility of Mr. Wright's testimony. If he's correct in certain verifiable facts, it makes it somewhat more likely that he's correct in other ways too. If he had gotten those factors wrong, I certainly think that would be an important thing for this court to focus on. How can we trust him here if he was wrong there? So based upon all of those things, the evidence was sufficient for murder. Your Honor has discussed the factors that the court was to consider in coming to its determination. Things like the opportunity to see the defendant at the time of the crime. Well, Mr. Wright testified that he saw the defendant's face as he leapt into the back of the car. His degree of attention, the court noted that Mr. Wright gave details that he was able to provide sufficient information to show that he was attentive. The accuracy of the witness's description, as far as we can tell, it seems as though the description provided by Mr. Wright was accurate and did accurately describe the defendant. His level of certainty, Mr. Wright said that he would never forget the person who shot his friend. He certainly expressed a strong level of certainty. And its length of time between the crime and the initial identification. This is an identification that he provided only eight days after the offense. That length of time has been recognized by courts to not be particularly significant. So based upon all of these factors, along with the corroboration, I would argue that this court should affirm and reject the defendant's argument in relation to this particular argument. Second, the evidence was sufficient for the aggravated battery. Now, for this particular claim, I would argue that the most significant evidence is the evidence the court expressly relied upon. Now, while it's true that saying that something was a graze wound does tend to be a little bit ambiguous, what we had in this case was an actual physical demonstration by Mr. Wright. Mr. Wright got up in the middle of the courtroom and indicated where on his body the bullet struck him. The court made a record saying it appears as though he's pointing towards his left hip. And then later when the court was giving its decision, it expressly noted that physical demonstration that Mr. Wright provided in coming to its conclusion, not that he was an early misfire bullet, not that it struck him in his clothing, but that he was struck in the hip by this bullet. Unfortunately, that was not recorded for us. We don't have an exact way of knowing exactly how he pointed himself. But the court's indication that he's pointing his left hip, and then the court relying on that in order to determine that Mr. Wright was in fact struck in the hip, all supports this conviction for aggravated battery. Mr. Goldman? Yes, Your Honor. Mr. Goldman, these are conclusions, though, that were testified to. No real details. I mean, there was nothing about injury and pain, nothing else. Are you telling this court that that is sufficient under these circumstances? Well, Your Honor, the direction that he pointed on his body, if he struck by a bullet, I would argue that it's a fair inference from the court to include that. If you are struck by a bullet, that it would cause an injury, especially depending upon the kind of indication that he gave. If he indicated a glancing blow, I think the court probably would have said that there was not enough evidence. But the court said he was struck in the hip, and I think that particular language indicates that his physical demonstration showed it was the kind of thing that could only produce a wound. He also, one of the officers, I might add, testified that when he was interviewing Mr. Wright, Mr. Wright did describe it as a grazed wound. Now, while this is secondhand information, there was at least some reference to there being a wound in this case. He also said that he was struck in the abdomen and the back. How does that square with a graze of your hip? Yes, Your Honor. I would argue that he was perhaps a little nervous, that he wasn't using the best terminology, and that the clearest indication of where he was in fact struck was... I think just using the word would suggest he knows what his abdomen is. True, Your Honor. And I don't think that anybody would describe a graze of the hip as striking me in the abdomen. Yes, Your Honor. Again, there's no way for us to know for sure what was going through his mind. Have you ever seen an aggravated battery case where there was no evidence of the injury other than the victim saying he was injured? In my experience, I have not. Mine either. And I've been doing this a long time. Yes, Your Honor. However, due to the way that he did describe that he was struck, that he suffered a graze wound, that his physical demonstration, again, viewed in the light of the evidence most favorable to the state, the question isn't have we in our common experience seen this in the vast majority of cases. The question is, is there any reasonable basis for the court to conclude this? And unfortunately for us, we can't see what that physical demonstration looked like. But for the court, when it saw that appeared to be the struck evidence that it relied upon, it started to argue that this court should not reverse that court's view of the evidence. If the victim went to his employer and the employer said, why weren't you working yesterday? And the victim said, well, I got shot in the hip. The employer would say, what? Yeah, I got shot in the hip. I think that unless he had a sterling record with that employer, the employer would say, well, let me see it. Or did you go to the doctor? Did you go to the hospital? Did you get treated? Did they do anything to your clothing? Are you just telling me you got shot in the hip? Well, it just grazed me. I would think that's like the dog ate my homework if I was the employer. Sure. And I think for most people, we would say the dog did eat this person's homework or that this does seem to not make sense. But I think within the context of what we know of Mr. Wright, it does make a little bit more sense. He leads a very different life than – In other words, yeah, I get shot all the time. Is that what you mean, his lifestyle? Not so much, Your Honor. More so that we would expect most people to have medical records of having been shot. But Mr. Wright, he's trying to flee a warrant, essentially, is his testimony in this case. We don't know his situation with health insurance, perhaps. But there are additional things about Mr. Wright that make his story of how he fled, even though he had this injury, didn't seek medical attention, all of these things, while certainly not what we would expect from your typical citizen, something that seems to align with his narrative of a person who is essentially trying to evade the law. And while his testimony certainly is not perfect and there are certain things that would make a reasonable person scratch their head, they're still – it all tends to coincide with each other. He testifies that he runs from the police, that he doesn't want to police involvement at first. He testifies that it's a – the wound was relatively minor. It makes sense that a person under the circumstances who is trying to evade police contact wouldn't call the police, wouldn't have photographs taken, wouldn't go to the hospital for that sort of thing. If there are no further questions on that point, I'll move to the effective assistance of counsel claim. Your Honor, the third point raised by defense counsel was the argument that counsel was ineffective for failing to perfect the impeachment of Phil Powitz and Mr. Wright. I'll just touch on those briefly. The easiest way that this court can affirm in relation to those arguments is on the issue of prejudice. Wright's statement about the position of the bandana, as Your Honor noted, when other officers testified as to the position of the bandana, that evidence came in through alternative witnesses. And, in fact, the defense attorney at trial, in closing argument, argued that the bandana was obscuring the defendant's face. So, essentially, what defendant is now asking on appeal is that, in addition to that coming in through these alternative means, it should have also come in through direct confrontation with Mr. Wright. And, Your Honors, I would simply argue that that would not have made a difference. This evidence came in through an alternative source. If it came in again, it wouldn't be merely cumulative. This communication would have changed the outcome of the trial. And the same issue is present for Mr. Phil Powitz's prior statement. The only admissible portion of that affidavit was his claim that his prior statements to the police were a lie. This is something that he testified to repeatedly in court. And so this is something that defense counsel is able to use substantively. For that reason, even if these things had come in substantively through perfecting the impeachment, it would have been merely cumulative. It would not have changed the outcome. For all of these reasons, Your Honors, we would ask that this court affirm the judgment of the trial court. Thank you, Mr. Goldman. Thank you. Mr. Jackowitz. Am I pronouncing that correctly? Jaswyk. Jaswyk, I apologize. Just in response to the arguments made by counsel, especially in reference to the eight-day – I'm not claiming that eight days is too big of a difference of time to be able to make an identification. It's all the other factors that go into the fact of how he made the identification, even the fact of circling the picture saying, I've seen this guy around. I mean, all of that factors into this. And at the end of the day, the credibility, whether or not there is a sufficient basis to support, in the light most favorable to the prosecution, the question is, is this eyewitness someone that can be reasonably relied upon for the conviction of a person for first-degree murder based upon all of these facts, the facts being whether it is intention, scrambling into the backseat of the car, this happened within seconds. And that's what we have with identifications that are made by eyewitnesses that make identifications. And a lot of times, those identifications are misidentifications. But I think we have to take everything not as a single fact, but all taken together. All taken together with Mr. Wright's criminal history, all taken together with Mr. Wright's leaving the scene afterwards, all the factors of Mr. Wright, the manner in which he gave a statement indicating that it was Mr. Brown, or never said Mr. Brown, but pointing out a picture of Mr. Brown. I think the reason that we're here is for this court to determine whether or not that was a proper verdict. And I don't believe that it was. And that's our argument, Your Honor. Thank you, Counsel. Thank you. Thank you, Your Honor. Thank you for your arguments, Counsel. The court will take this matter under advisement, and the court stands in recess.